## COURT OF APPEALS.

DANIEL D. COMSTOCK, respondent, agt. JOHN DODGE, executor, &c., appellant.

Where in an action of *assault and battery*, for forcibly expelling the plaintiff from defendant's premises, it is a question for the jury to determine, from the evidence whether the defendant had *actual possession* of the premises, giving him the right of such expulsion, where the evidence was uncontradicted that the defendant's son with his family occupied the premises, but under an arrangement with the defendant that the latter was to keep possession of the farm and premises and provide all the materials and necessaries for living, and pay his son a stated salary per year for his services on the place.

Where the jury, under the charge of the judge, are prohibited, from passing upon the question, an exception to such charge on that point is well taken.

Where the defendant in such action has died since the trial, and the cause of action not being one that survives, a new trial should not be ordered, for no trial of the issue can again lawfully take place. (MASON, *J. dissenting.*

*June Term,* 1869.

APPEAL from a judgment of general term of the seventh district.

GEO. B. BRADLEY, *for appellant.*

Action, assault and battery. Tried at Steuben circuit. Verdict for plaintiff. Defendant's exception heard at general term, seventh district, in first instance. New trial denied and judgment ordered on verdict. Judgment perfected. The testator having appealed to this court, died. His executor submitted. No opinion written.

The evidence authorized the jury to find the facts as follows:

The defendant's testator owned a farm and dwelling house on it, situate in the town of Corning, county of Steuben, upon

which he had resided upwards of forty years, preceding March, 1862.

In March, 1862, his son James went to living in the house on the farm, under an arrangement by which he was to work for and under the direction of the testator, at the price of $150 per year for his services, the testator to keep a hired girl in the house, furnish everything, and board the son and his family there; the testator to keep the possession and entire control of the house and premises and board his hands there; in fact the son James was the mere servant of testator.

Under this arrangement the son James was living in the house at the time in question, the testator furnished the provisions and they belonged to him; all the personal property on the premises, including the furniture in the house (with slight exception) also belonging to him, and his son James merely lived there under his direction and as his servant.

In May, 1862, the plaintiff went on the premises to and into the house there without any license or authority and there spoke harshly to the testator, who thereupon requested the plaintiff to leave the premises and informed him that he (the testator) had the control of the premises. The plaintiff refused to go, and after repeating the request several times, the testator sought to remove him, and in so doing used no unnecessary or unreasonable force or violence. The force thus used constitutes the alleged assault and battery. The son James was present a portion of the time in question, and did not in any manner (so far as appears) object to the assertion and exercise by his father of the right to expel the plaintiff from the premises.

It seems that relations of the parties had not been pleasant. The plaintiff recovered a verdict of $287.

The questions arise upon the exception to the charge as made, and upon the exceptions to refusal to charge as requested, whereby the court held as matter of law, that the testator had no right to require the plaintiff to leave the premises, or to expel him therefrom under any circumstances,

inasmuch as his son James resided there, although the latter was a mere servant of the testator; and the court refused to submit any question to the jury in that respect.

I. The first exception to the charge of the court was well taken.

The court by this charge held, that the fact that the testator's son James was rightfully residing in the house, gave him exclusive control of it, whatever may have been the arrangement with the testator under which he resided there; and that the testator had not the right to expel the plaintiff or to exercise control there, although such right was expressly reserved to him by the arrangement under which James was residing there; that James had the exclusive control and that the testator could act only by his authority.

1. It may be that the house was the domicil of the son James, so as to enable him to protect him against an intruder, yet the testator also had the right to remove a stranger from the house; the testator's right to control, and his possession which he reserved and had by the arrangement, gave him the authority to produce the removal of the plaintiff at the time in question.

2. The son James was residing there as the servant of the testator, and it was not necessary for the testator to act through James or by his direction or request, although it might have been, and was, the duty of James to act under the direction of the testator, his master, and in so doing would represent the latter; the authority of James was merely derivative not independent.

3. By the charge, the court repudiates entirely the arrangement that the testator should have the control and possession, and gives James the exclusive control, and makes him the superior of the testator, makes the master the servant, and the servant the master.

II. The court ought to have submitted to the jury the first, second and third propositions, as requested respectively, or some one of them.

1. The evidence fairly authorized the jury to find that James McBurney, the son, was a mere hired servant of the testator, and that the latter had the control of the house and premises, and the right to direct the action of the servant in the house and on the premises.

That constitutes actual possession in the testator (*Haywood* agt. *Miller,* 3 *Hill,* 90, 92; *Putnam* agt. *Wise,* 1 *Hill,* 248).

2. The servant, James McBurney, had no possession; he was the mere instrument of the testator, who performed services through him. James McBurney by virtue of his own right, had no power to expel anyone from the premises, but by his relation as servant to the testator, authority to him was implied, and in exercising such power or in defense of the premises, he would be deemed acting for the testator, and as the instrument of the latter. It would be the act of the testator, and by virtue of his implied authority.

3. The right to expel a party from land by force, depends upon actual possession, and can only be justified by the party in possession (*Parsons* agt. *Brown,* 15 *Barb.,* 590.)

The testator clearly had the possession, and by the refusal of the plaintiff to leave the premises, on his request, he became a trespasser from that time, and the testator and nobody else had the right to expel him (*Adams* agt. *Rivers,* 11 *Barb.,* 397; *Wood* agt. *Leadbitter,* 13 *Mee. & Welsb.,* 838).

4. The idea of the judge at the circuit, that the house was the domicil of the servant, is true to a certain extent; he had the right to protect himself in it, and by virtue of the authority from the testator implied by his relation as hired servant, he had authority to protect the premises; but in the exercise of the right he would be deemed acting for the testator.

5. The expulsion of a party in such case is upon the idea of protection of property and not of the person.

And certainly what a party may do by another, he may do himself.

6. If the servant were prosecuted for expulsion of a party

from the premises of his master, he could not justify by any possession of his own, but as acting for his employer, and his relation would support his authority.

7. The action of trespass can only be maintained by the party in possession of occupied land (*Stuyvesant* agt. *Tompkins*, 9 *Johns.*, 61; *Frost* agt. *Duncan*, 19 *Barb.*, 560).

The servant, James McBurney, could not have enforced protection to the premises by action of trespass; the testator had possession, and he only could maintain such action. That is the test (*Putnam* agt. *Wise*, 1 *Hill*, 248; *Boggett* agt. *Frier*, 11 *East.*, 301; *Russell* agt. *Scott*, 9 *Cow.*, 281).

8. The servant, James, had no possession himself.—Ejectment would not lie against him (*Haywood* agt. *Miller*, 3 *Hill*, 92).

He had no independent right in respect to the premises. He could not assume any right in that respect as against the testator. The latter had the right to remove him from the premises (*Haywood* agt. *Miller*, 3 *Hill*, 92).

9. The servant, James, being the representative of the testator, the latter through him had the actual possession of the premises (*Putnam* agt. *Wise*, 1 *Hill*, 248).

And with it the right to protect them fully by physical force or by action.

He exercised his right in this case, and no more.

10. This is not a case of expulsion by force of a party in possession, by one having merely a right to the possession. The plaintiff was a stranger on the premises. Somebody had the right to require him to depart, and expel him.

The servant, James, may have had the authority as servant, but the defendant had the independent right.

11. It cannot be claimed that James had the right to expel the testator, that the servant could legally drive the master from his premises.

The entire services of James belonged to the testator, who was chargable for injurious consequences to others by negligence of the servant while in his service.

III. It appears, that James McBurney was present when the testator was removing the plaintiff from the premises, and made no dissent.

It is insisted that the jury were authorized to find that James consented to the expulsion.

In view of the holding of the court at the circuit, that the master and servant had changed positions, so that the servant had become the master, and that the testator could act in that respect only by his consent, the fourth proposition ought to have been submitted. Although the ruling of the court in this respect is not conceded to be tenable.

IV. The arrangement as stated by the testator, was effectual to continue the actual possession in him, and the servant, James living there pursuant to that arrangement, thereby relinquished to the testator all the rights in that respect (if any) which he otherwise may have had; and no authority of the servant can be set up against the affirmative action of the testator in relation to the premises.

The plaintiff was advised of the rights of the testator and has no reason to complain of the consequences.

The court ought to have submitted the question to the jury.

The judgment should be reversed, and new trial granted.

GEO. T. SPENCER, *for respondent.*

In March, 1862, James McBurney took possession of a house on the defendant's farm, in the town of Corning, under an agreement with the defendant to occupy the same, with his family for an indefinite period. In May, 1862, the plaintiff went to the house occupied by James McBurney, for the purpose of making a social call on his wife.

While there in conversation with Mrs. McBurney, the defendant came in and ordered the plaintiff to leave the house. The plaintiff refused to go unless Mrs. McBurney desired him to leave, she did not request him to leave.

The defendant thereupon seized the plaintiff by the collar,

dragged him out of door, off the steps down upon the ground and bruised and severely injured him from which injury he became sick, sore and lame, and so continued for a long time.

This action was brought to recover for the injuries sustained by him.

The action was tried before Hon. J. C. SMITH, and a jury. The plaintiff recovered two hundred and eighty-seven dollars, upon which judgment was entered. The defendant moved for a new trial in the general term, in the seventh district, which motion was denied, and he then appealed to this court.

I. James McBurney, being in the actual possession of the house when this assault and battery was committed, had the right to invite his friends or the friends of his wife thereto and with the consent of either, any of their friends could visit them and was not trespassers in so doing.

They had the right to determine who might and who might not come to this house as well from their rights as persons in actual possession, as from the permission of the defendant. He testified, "I told my son and his wife they must be very careful who they let come there or they would get imposed upon."

The plaintiff was the guest of Mrs. McBurney, and the defendant had no more right to expel him from the house than he had to expel her. She had received him as her guest, and was conversing with him when the defendant came in.

The defendant was not living at this house, but was residing with his family about half a mile distant.

To authorize a party forcibly to expel a person from premises, he must be in the actual possession thereof; having the right to possession is not sufficient (*Parsons* agt. *Brown*, 15 *Barb.*, 590; *Hyatt* agt. *Wood.*, 13 *J. R.*, 238).

II. The first exception taken by the counsel for the defendant is to the charge of the justice holding the court,

wherein he charged the jury, " that if they were satisfied from the evidence, that at the time of the injury, James McBurney was rightfully residing with his family in the house which the plaintiff visited, then the house as a domicil was for the time being under the exclusive control of James McBurney, and if the plaintiff lawfully visited the house for the purpose of seeing a member of the family residing there, and conducting himself properly while there, the defendant had no right to expel or remove him from the house by force without authority of James McBurney."

This charge was correct (2 *Kent's Com.*, 431 ; *Parsons* agt. *Brown*, 15 *Barb.*, 590).

This house was clearly the dwelling of James McBurney. His family resided there.

Any and every settled habitation of a man and his family is his house or mansion (*Mason* agt. *the People*, 26 *N. Y.*, 200).

III. The court charged the jury that this was a case in which they might give exemplary damages if they thought proper.

To this charge an exception was taken.

This was a proper case for the allowance of exemplary damages (*Worth* agt. *Jenkins*, 14 *J. R.*, 352 ; *Tillotson*, agt. *Cheetham*, 3 *J. R.*, 56 ; *Sedgwick on Damages*, 482).

IV. The request of the counsel for the defendant to charge the jury, was properly refused.

There was not evidence sufficient to authorize the jury to find that the defendant had actual possession of this house.

It is error to refuse to charge the jury as requested, if the evidence would not warrant them in finding the facts, even though as a proposition of law, the desired instructions are correct (*Kiernan* agt. *Rocheleau*, 6 *Bosw.*, 148).

V. The judge also properly refused to charge as requested.

It would have been improper for the court to submit the question, whether James McBurney was a mere servant or whether the defendant had actual possession of the house

There was no proof to justify the jury in finding that James McBurney was only a servant, and if the jury had so found their verdict, it would have been set aside. The question ·whether James McBurney was rightfully in possession had been fairly submitted by the judge in the charge as given.

VI. The request of defendant's counsel was properly refused.

It makes no difference what acquirements the defendant made with James McBurney, he yielded the house to him as a domicil and removed with family therefrom to a house some distance off, and took up his domicil or residence.

He abandoned it as a domicil when he left. He could control but one house as a domicil.

The fair import and meaning of the contract between the defendant and James McBurney, is that James was to have the use of the house, furniture and wages of a hired girl, and $150 for his services for one year.

This made James a tenant of the defendant, and so long as he performed his part of the contract, the defendant had no right to remove him, until the defendant had recovered possession, James had the right to control the house, and say who should and who should not visit him or his family there.

VII. The judge also properly overruled the request of defendant's counsel.

To authorize a party to eject a person by force from a house or from premises, he must have the actual possession, having the right to the premises is not sufficient (*Parson* agt. *Brown*, 15 *Barb.*, 590 ; *Hyatt* agt. *Wood*, 3 *J. R.*, 23S).

And there was no evidence which would authorize the jury in finding that the expulsion was by the assent of James.

VIII. The judge properly overruled the request of the counsel for the defendant to charge as requested (*See authorities under last point*).

There was no proof which would have authorized the jury to find the plaintiff was a trespasser; and if he was at the time, there was no proof that the defendant had the authority to expel him.

DANIELS, *J.*—The only evidence given upon the trial of this cause concerning the terms made, while James McBurney occupied the dwelling-house, from which the defendant forcibly expelled the plaintiff, was that which was given by the defendant himself; he stated those terms to be that he was to keep possession of the farm and house; to keep a hired girl there; and board his son and his family there, and pay him $150 per year for his services; that he, the defendant, was to furnish every thing for the house; keep possession and board his hands there; that he was to have entire control of the premises, and his son to work for him under his direction. That the furniture, beds, bedding and materials for the table, and all the personal property on the premises, belonged to him; that he furnished all provisions and every thing for the house, and that his son staid there under the arrangement mentioned by him.

If this evidence was true—and it was for the jury to determine whether it was so or not—then it was clear that the defendant was in the possession of the house when he removed the plaintiff from it. For, as his son occupied it for him, and not for himself, as his servant and under his control and direction, that rendered the possession his own, and not that of his son (*Putnam* agt. *Wise,* 1 *Hill,* 234. 248; *Haywood* agt. *Miller,* 3 *Hill,* 90; *Robertson* agt. *George,* 7 *N. H.,* 306).

And after giving the plaintiff notice that this was the relation existing upon this subject between himself and his son, as the plaintiff testified he did, he had a right to require him to leave the house, and upon his refusing to do that unless directed to do it by his son's wife, whom he had gone there to visit, the defendant was justified in applying such a degree

of force to him as was rendered necessary for the purpose of securing obedience to the direction he had given.

The learned judge at the trial, therefore, erred in declining to charge the jury that the defendant was justified in expelling the plaintiff from the house, if they should find the fact that he was at that time in possession, and that he used no more force than the occasion required after he had first requested him, and the plaintiff had refused, to leave the house. His request was afterwards twice again repeated, and to each repetition of it the court responded as before.

The charge, as given, did not include or answer it. For the jury could have very consistently found that the defendant's son was rightfully residing with his family in the house, while the actual possession was that of the defendant. Such, no doubt, was their relation, if what the defendant testified to was the truth; but the charge of the court totally deprived him of the legal benefit he was entitled to derive, by way of defense, from the possession he had of the dwelling-house. The point was clearly and distinctly raised, as well as fairly presented, by the evidence and the defendant was entitled to have the judgment of the jury upon it. As he was deprived of that right the judgment appealed from should be reversed, but as the defendant has departed this life since the trial was had, and the cause of action is not one that survived his decease, it should be done without directing a new trial, for no trial of the issue can again lawfully take place, and without costs to either party.

HUNT, LOTT, WOODRUFF and GROVER, JJ., concur.
MASON, J., dissents.